329 F.Supp. 1320 (1971)
James Clarence DAWSON et al.
v.
Carol S. VANCE et al.
Civ. A. No. 70-H-299.
United States District Court, S. D. Texas, Houston Division.
July 29, 1971.
*1321 Ben G. Levy, Houston, Tex., for petitioners.
Joe S. Moss and James Brough, Asst. Dist. Attys., Houston, Tex., for defendant Carol S. Vance.
Willard E. Dollahon, Asst. City Atty., Houston, Tex., for defendant Herman B. Short.

MEMORANDUM AND ORDER:
HANNAY, District Judge.
The Three Judge District Court, Title 28, U.S.C.A., Sections 2281 et seq.; Jackson v. Choate, 5 Cir., 404 F.2d 910, 913, convened in this case on April 3, 1970, has by its order entered July 26, 1971, been dissolved in light of the United States Supreme Court decision of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (February 23, 1971) and related cases. By this order of Dissolution instant case is returned to this Court, wherein it originated, for appropriate action.
It is the considered opinion of this Court that the mentioned case of Younger v. Harris, supra, and its related cases, to-wit, Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688; Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696; Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701; Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781; Byrne v. Karalexis, 401 U. S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792, all of which were decided by the United States Supreme Court on February 23, 1971, warrant and require dismissal of this suit. See also: Wade v. Buchanan, No. 289, and Buchanan v. Wade, No. 290, *1322 401 U.S. 989, 91 S.Ct. 1221, 1222, 28 L.Ed.2d 526 (March 29, 1971).[1]
In addition to the foregoing, I submit without alteration the following opinion prepared by me more than a year agowhich opinion would have been the basis for dismissal had this case been deemed then, as it is now, appropriate for disposition by a one judge federal equity court:
The Petitioners seek the extraordinary relief of a federal writ of injunction on constitutional grounds, Title 28, U.S.C.A., Sections 2281, 2284, and this Court's declaratory judgment, Title 28, U.S.C.A., Section 2201 et seq., against any prospective enforcement of a state criminal statute written under the authority of the Legislature and State of Texas. Title 28, U.S.C.A., Section 1343(3); Title 42, U.S.C.A., Section 1983.

I.
The state statute in question, Article 524, Texas Penal Code, forbids and condemns the practice of sodomy. Sodomy is an act upon or concerning the physical being of a person. It is an act of immemorial anathema both at common law, wherein it was punishable by death, 81 C.J.S.Sodomy § 1, p. 370, and in ancient times. Genesis 19: 1-29. It is clearly an offense involving moral turpitude whether defined by common law or by statute. The practice is inherently inimical to the general integrity of the human person. This is a postulate not of dogma but of common knowledge. It warrants the dignity of judicial knowledge. The primary authority and responsibility of the several states to forbid and control otherwise natural libidinal vice could scarcely be questioned. Their primary power over aberrational libidinal vice is no less sure. Sodomy is, therefore, in the general sense a crime the control of which is clearly within the reserved and police powers of the several states. Articles IX and X, United States Constitution; Douglas v. City of Jeannette, 319 U.S. 157, 162-165, 63 S.Ct. 877, 87 L.Ed. 1324. Forthwith, therefore, this case is in the general sense distinguishable from those involving per se or rationally related congregational or expressional rights and state statutes deemed inhibitory of the exercise of the freedom of speech and assembly guarantees of the First Amendment of the federal Constitution as applicable to the states through the Fourteenth Amendment thereof. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); compare: Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968).
Further material distinctions, both procedural and substantive, which this case presents in contrast to recent case authorities in the area of First Amendment constitutional adjudication will be adverted to later herein.

II.
1. The Petitioner Dawson heretofore sought in this cause an injunction against the District Attorney of Harris County, Texas restraining the pending prosecution against him of several felony charges of sodomy upon minors. This relief was denied the said Petitioner Dawson under the federal Anti-Injunction Statute, Title 28, U.S.C.A., Section 2283, which provides:
"A Court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."
The Petitioner Dawson additionally contends that Article 524 fails to distinguish between private and public acts of sodomy and fails to exclude from its *1323 proscription consensual acts of sodomy between adults committed in private. Petitioner claims that this inscriptive deficiency in the statute works a violation of his federal constitutional right to privacy and his First Amendment-Fourteenth Amendment rights.
2. The intervening Petitioners, Donald W. Snell and Jan Hinton Snell, an alleged married couple, urge their suit as a class action in behalf of all such married persons similarly situated. A substantial preliminary question exists whether the intervening Petitioners, Donald W. Snell and Jan Hilton Snell, can maintain their suit in its present posture as a class action under Rule 23, Federal Rules of Civil Procedure, as amended in 1966. Charles Allen Wright, Law of Federal Courts, Second Edition (1970), Section 72, Class Actions, pages 306-317. In their Petition, the said intervening Petitioners purport to admit to acts of sodomy committed within their alleged marital union. These allegations in the form of admissions are conclusionary in nature. These intervening Petitioners, on the basis of their alleged libidinal conduct, could fairly represent without conflict only members of a class, married or otherwise, who commit heteroerotical sodomy. Rule 23(a) (4), Federal Rules of Civil Procedure; Anderson v. Moorer, 5 Cir., 372 F.2d 747, 751, f. n. 5; Wright, Law of Federal Courts, 2nd Ed., at 308-309. The Intervenors' Petition and the stipulation reveal, however, that a right of privacy as promulgated in a recent United States Supreme Court decision is asserted as applicable to this case; and this constitutional right of privacy, in an appropriate case, arguably extends to the marital union in general. Thus, in strict terms of the constitutional right of privacy and the limits thereof, there are common questions of law and fact, Rule 23(a) (2) (b) (3), as amended in 1966, as concerns the marital union as a class. Moreover, Rule 24(b), Federal Rules of Civil Procedure, governing Permissive Intervention, permits intervention where the applicants' "* * * claim or defense and the main action have a question of law or fact in common * * *". While the primary offenses in instant case were allegedly committed against minors, the indictments in instant case were for oral and anal sodomy. Under the statute no distinction is drawn in this form of sodomy between adults and minors. Thus common questions of law and fact readily arise from any application of the plain reading of this portion of the statute irrespective of the age of the victims or the participants. The prosecution in instant case was maintained against an adult only. On the basis of the alleged facts it was maintainable under the statute on the strength of the alleged act rather than the age of the other participants. The exemption from the statute sought by the Intervenors arises not from any consideration of personal age but from the legal relationship created by their alleged marriage.
The import of the complaint by the intervenors Donald W. Snell and Jan Hinton Snell is that Article 524 inadequately defines the offense of sodomy and would impermissibly permit a prosecutorial intrusion upon the privacy of the marital union. The record before this Court does not reveal an instance in which a criminal prosecution has been maintained under Article 524 against a married couple or a member thereof for sexual acts committed within their marital union. There is no such factual contention here. The Court accepts as established fact that there has never been.
3. As heretofore indicated, the adversary parties here have stipulated to the material facts in this case. The stipulation is of record. The material facts will be adverted to in this opinion as they are deemed necessary to the disposition of this case.

III.
In point of substantive law the Petitioners rely heavily upon the recent United States Supreme Court case of Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). In point of substantive law, Griswold struck *1324 down convictions under a state criminal statute that forbade the use of contraceptives and under the accessory statute of that state pursuant to which two officials, one a physician, were convicted for counseling the use of contraceptives within the marital union. Griswold announced the doctrine that "* * * the First Amendment has a penumbra where privacy is protected from governmental intrusion." 381 U.S., at 483, 85 S.Ct., at 1681. And it is not disputed here that this right of privacy was applied to the marital union in the particular facts presented by Griswold.
But it is to be remembered that this is a Court of equity. Any affirmative relief that issues from this Court is in law extraordinary in nature. Griswold, viewed procedurally, reflects the deficiency, indeed the fallacy, of Petitioners' contention at this time. Griswold was decided by the United States Supreme Court under its appellate jurisdiction over state criminal prosecutions. It is a deeply rooted principle of federal equity jurisprudence that it will not interfere with state criminal prosecutions save in most extraordinary and compelling circumstances. Cleary v. Bolger, 371 U.S. 392, 397, 83 S.Ct. 385, 9 L.Ed. 2d 390; Stefanelli v. Minard, 342 U.S. 117, 120-125, 72 S.Ct. 118, 96 L.Ed. 138 (Opinion by Mr. Justice Frankfurter:
"The maxim that equity will not enjoin a criminal prosecution summarizes centuries of weighty experience in Anglo-American law."
at 120, 72 S.Ct. at 120, and quoting from Mr. Justice Holmes:
"* * * `The relation of the United States and the Courts of the United States to the States and the Courts of the States is a very delicate matter that has occupied the thoughts of statesmen and judges for a hundred years and cannot be disposed of by a summary statement that justice requires me to cut red tape and to intervene (1929)' * * *". At 124-125, 72 S.Ct. at 122;
Pugach v. Dollinger, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678; Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416; Beal v. Missouri Pac. R. Co., 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577; Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322; Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927. And this self-imposed federal judicial restraint has been exercised even where substantial countervailing federal interests were involved. Maryland v. Soper, 270 U.S. 9, 46 S.Ct. 185, 70 L.Ed. 449; 270 U.S. 36, 46 S.Ct. 192, 70 L.Ed. 459; 270 U.S. 44, 46 S.Ct. 194, 70 L.Ed. 462. In Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), the United States Supreme Court dismissed an appeal from a judgment of the Supreme Court of Errors of the State of Connecticut affirming dismissals of complaints seeking declaratory judgments that the Connecticut anti-contraceptive statute of 1879 was unconstitutional. This was the same statute which was eventually struck down in Griswold when the issue was squarely presented by a criminal prosecution. The record in Poe before the United States Supreme Court did not, in the view of the majority, reveal such a threat of criminal prosecution against protected parties as would justify the gravity of a constitutional adjudication.
In the exercise of its power as a court of equity where the constitutionality of a state statute is attacked, a federal court must also consider and if appropriate apply such familiar principles as the adequacy of the remedy at law and the need for a danger of irreparable loss that is both great and immediate. Watson v. Buck, supra, 313 U.S. at 400-401, 61 S.Ct. 962.
As heretofore indicated the record is barren of any instance in which a married couple has been prosecuted under Article 524. The marital union in this state, as elsewhere, is protected by innumerable laws both civil and criminal, *1325 both procedural and substantive. It is an institution which is protected by unwritten laws that are oft-times the most potent of all. Poe v. Ullman, supra, 367 U.S. at 502, 81 S.Ct. 1752, citing and quoting from Nashville, C. & St. L. R. Co. v. Browning, 310 U.S. 362, 369, 60 S.Ct. 968, 84 L.Ed. 1254. In Texas, spouses cannot in this type of case be compelled to testify against one another. Article 38.11, T.C.Cr.P. What elective state prosecutor would lightly undertake a criminal proceeding that would almost necessarily call into question as a preliminary matter the integrity of the marital union? The discernible and recorded prosecutorial history of the statute in question fairly supplies the answer.
It is fundamental that issues of constitutional law should not be adjudicated until they are inescapably presented and arise from strictest necessity. Parker v. County of Los Angeles, 338 U.S. 327, 333, 70 S.Ct. 161, 94 L.Ed. 144. Rescue Army v. Municipal Court of Los Angeles, 331 U.S. 549, 67 S.Ct. 1409, 91 L.Ed. 1666. The remoteness and implausibility of an actual prosecution are clearly factors bearing on the forbidden anticipatory, and perhaps advisory, constitutional adjudication. Nor can it be disputed that the statute in question is peculiarly and immediately susceptible to a narrowing construction by state courts in any area of possible impermissible application.

IV.
The Court's attention is called to the recent three judge district court case of Buchanan v. Batchelor, 308 F.Supp. 729, which arose in the Dallas Division of the Northern District of Texas and which is substantially similar to instant case.
1. The contention at bar concerning private consensual acts of sodomy by adults presents little if any difficulty. The federal Constitution guarantees to each state a republican form of government. The essential police and reserved powers of the several states are in the general sense undisputed. The high case authorities are legion that proclaim the primary duty and power of the states to promulgate and enforce criminal laws particularly those crimes that have long been recognized and condemned at common law. The Court is addressed to no case authority or plausible constitutional doctrine that would strip a state legislature of its power to condemn sodomy on the basis of its privacy of situs or the adulthood and consent of the participants. Nor can the Court conceive of any crime against the person proper being legitimated on such grounds solely by intervention of the judicial power.
2. The authority of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), is urged as the decisional means by which this Court should determine the constitutionality of the state statute in this proceeding. Dombrowski concerned a Louisiana statutory Subversive Activities and Communist Control Law. The record revealed that it was being utilized by state officials in an oppressive and harassing manner and other than in good faith under the cloak of actual or threatened prosecution. 380 U.S. 482, 487-489, 85 S. Ct. 1116. The door to such state conduct was patently opened by the evident rhetorical vagueness of the state statute. The record in Dombrowski further revealed the state conduct to have been directed against an ethnic minority in their pursuit of presumptively legitimate socio-economic goals. 227 F.Supp. 556, and the dissenting opinion at pages 569-583. We therefore see in Dombrowski the subtle vice of a nascent political problem of global proportions, the espousal of communism, being combined under the proscriptive terms and/or the actual enforcement of a state statute to impermissibly reach the free speech and assembly rights of a racial minority against whom the practice of discrimination was not new.
It is therefore plain that Dombrowski involved per se or rationally related expression and assembly within the contemplation of the First Amendment. So it is with other recent United States *1326 Supreme Court authorities that presaged or that have subsequently applied its doctrine. Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405; Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992; Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377; Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444; Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed. 2d 182. The United States Supreme Court has indeed recognized First Amendment protected speech that is symbolic in nature. Tinker v. Des Moines School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731; West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628; Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117; but these fall far short of involving a long recognized, hard-core common law crime that is heinous in substance and in nature. Compare: Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471, which struck down a state breach of peace statute as interpreted and applied by the state supreme court on direct appeal from that state court and which involved the speech and assembly rights of an ethnic minority. It is to be remembered that Dombrowski itself recognized that class of state penal statutes that must remain immune to summary and interposing federal equitable review and perhaps abrogation on constitutional grounds. 380 U.S., at 484-485, 85 S.Ct. 1116. See also: Zwickler v. Koota, 389 U.S. 241, at 253, 88 S.Ct. 391, 19 L.Ed. 2d 444, and Cameron v. Johnson, 390 U.S. 611, at 618, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968). Noteworthy in Cameron on this point is the forceful statement of Mr. Justice Fortas, 390 U.S. at 623, 88 S.Ct. at 1342:
"* * * Dombrowski's remedy is justified only when First Amendment rights, which are basic to our freedom, are imperiled by calculated, deliberate state assault. And those who seek federal intervention bear a heavy burden to show that the State, in prosecuting them, is not engaged in use of its police power for legitimate ends, but is deliberately invoking it to harass and suppress First Amendment rights. Dombrowski should never be invoked when the State is, in substance and truth, engaged in the enforcement of valid criminal laws."
It is clear that a viable federalism would be seriously impaired, perhaps undermined in time, by precipitate equitable interference with state prohibition of heinous crimes. For instance: If an equity court declared such a statute unconstitutional for rhetorical overbreadth, could not the general wrong be committed with impunity prior to the redrafting of the statute by the state legislature in light of the basic constitutional prohibition against ex post facto laws and Bills of Attainder? In Texas no act or omission is a crime unless made so by statute. Articles 1, 3, and 7 Texas Penal Code; 16 Tex.Jur. 2nd 89. Nor is there a severability clause in Article 524.
Article IV, Section 4 of the United States Constitution guarantees to the several states a republican form of government. It would be the opposite of this to lightly subject state statutes prohibiting heinous crimes to precipitate and peremptory federal court equitable review absent extraordinary circumstances. State responsibility in this area is primary. And experience shows that there alone, on the whole, can it be competently exercised. Cameron v. Johnson, 381 U.S. 741, at 753-754, 85 S.Ct. 1751, 14 L.Ed.2d 715 (dissent by Mr. Justice Black).
3. On the necessity of a declaratory judgment, Title 28, U.S.C.A. Section 2201, as to the constitutionality of Article 524, Texas Penal Code. The said state statute reads as follows:
"Whoever has carnal copulation with a beast, or in an opening of the body, except sexual parts, with another human being, or whoever shall use his mouth on the sexual parts of another human being for the purpose of having *1327 carnal copulation, or who shall voluntarily permit the use of his own sexual parts in a lewd or lascivious manner by any minor, shall be guilty of sodomy, and upon conviction thereof shall be deemed guilty of a felony, and shall be confined in the penitentiary not less than two (2) nor more than fifteen (15) years."
Title 28, U.S.C.A., Section 2201, of the federal Declaratory Judgment Act, provides as follows:
"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."
a. As a fundamental matter it must be remembered that the requirement of a justiciable case or controversy within the meaning of Article III of the United States Constitution as necessary to support the exercise of the judicial power is no less exacting in a declaratory judgment proceeding than in any other form of purported litigation. Alabama State Federation of Labor, etc. v. McAdory, 325 U.S. 450, 461, 65 S.Ct. 1384, 89 L.Ed. 1725; Coffman v. Breeze Corps., 323 U.S. 316, 65 S.Ct. 298, 89 L.Ed. 264; Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 299-300, 63 S.Ct. 1070, 87 L.Ed. 1407; Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826; Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617. See also: Poe v. Ullman, 367 U.S. 497, 502-507, 81 S.Ct. 1752, 6 L.Ed. 2d 989; compare: Baker v. Carr, 369 U.S. 186, at 198-204, 82 S.Ct. 691, 7 L.Ed.2d 663, and the distinction drawn between lack of federal subject matter jurisdiction on the one hand and the inappropriateness of the subject matter for judicial consideration ("nonjusticiability") on the other in an action for declaratory judgment. Absent the requisite "case" or "controversy", a judicial pronouncement is calculated to involve the forbidden and disruptive advisory opinion. Alabama State Federation of Labor, etc. v. McAdory, supra, 325 U.S. at 461, 65 S.Ct. 1384; Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L. Ed. 246; Gordon v. United States, 117 U.S. 697 (Opinion by Mr. Chief Justice Taney); Hayburn's Case, 2 U.S. 355, 357, 1 L.Ed. 436; See: Muller v. Olin Mathieson Chemical Corp., 2 Cir., 404 F.2d 501, 504 (1968); Brown and Root, Inc. v. Big Rock Corp., 5 Cir., 383 F.2d 662; American Fidelity and Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co., 5 Cir., 280 F.2d 453, 461.
6. The authority and rationale of Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989, argue forcefully against the granting of extraordinary relief here. The facts here are far more compelling than there in light of the hard-core common law felony crime proscribed by the statute. This is in contrast to the misdemeanor involved in Poe, 367 U.S. at 499, f/n 2, 81 S.Ct. 1752, as in Griswold, 381 U.S., at 480, 85 S.Ct. 1678, and the arguably legitimate socioeconomic, familial and health questions presented by the Connecticut statute. The elements of the offense in the statute here are clear and limited. The statute is addressed to sufficiently narrow and limited forms of human libidinal aberration. At common law and by sovereign legislative mandate the proscribed conduct is felonious and involves moral turpitude. Recent United States Supreme Court cases that might suggest federal justiciability here involved distinctively civil rights issuespolitical, social, and ethnic. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L. Ed.2d 22; Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444; Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182; Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed. *1328 2d 663. Only in the most remote, strained, conjectural, and peripheral sense could that be the case here; and state administration of the statute to date does not warrant and will not support its abrogation by a federal equity court. See and compare: Wells v. Reynolds, 382 U.S. 39, 86 S.Ct. 160, 15 L.Ed.2d 32 (1965), affirming Wells v. Hand, D.C., 238 F.Supp. 779; Zwicker v. Boll, 391 U.S. 353, 88 S.Ct. 1666, 20 L.Ed.2d 642 (1968), affirming D.C., 270 F.Supp. 131; Brooks v. Briley, 391 U.S. 361, 88 S.Ct. 1671, 20 L.Ed.2d 647 (1968), affirming D.C., 274 F.Supp. 538, and the federal judicial restraint exhibited in these cases in applying the Dombrowski doctrine to state criminal statutes of less penal gravity than the one at bar.

V.
1. The penal statute in question is not invalid on its face and there is no proof or plausible claim of bad faith enforcement thereof by the state.
2. There is no such threat of a prosecution of a husband and wife under the statute as to render their attack upon the statute justiciable in federal equity or for purposes of a declaratory judgment.
3. The Petition in its entirety does not present a case or controversy requisite to or appropriate for declaratory judgment. Compare the unanimous opinion in Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113, and Zwickler v. Koota, 389 U.S. 241, 252-255, 88 S.Ct. 391, 19 L.Ed.2d 444, where even in a civil rights case appropriate for declaratory judgment consideration the distinction is drawn between separately considering the request for declaratory relief and independently determining whether the requisites for rendition of a declaratory judgment actually exist.
4. Petitioners' remedies at law are adequate and there is no such threat of grave and irreparable damage as to justify this Court's interference with the state's administration of this criminal law.
Accordingly, the Petition should be and is in all respects dismissed for want of jurisdiction over the subject matter.
The foregoing shall constitute Findings of Fact and Conclusions of Law. This is and constitutes a final judgment herein.
NOTES
[1] By these cases the United States Supreme Court vacated the judgment in Buchanan v. Batchelor, U.S.Dist.Ct.N.D. Texas, 308 F.Supp. 729, which involved the same issues presented here, and remanded it for reconsideration in light of Younger v. Harris, supra, and Samuels v. Mackell, supra.